c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ELIZABETH SIMON, Plaintiff | CIVIL ACTION NO. 1:17-CV-00237 |
| VERSUS | |
| REBEKAH GEE, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the Court are: (1) a Motion for Summary Judgment (Doc. 57), filed by *pro se* plaintiff Elizabeth Simon ("Simon");[1] and (2) a Motion for Summary Judgment (Doc. 52), filed by Defendants Rebekah Gee ("Gee"), Karen Medlock ("Medlock"), and Michelle Duncan ("Duncan") (collectively referred to as "Defendants"). Because Simon has not raised a genuine issue of material fact that Defendants are entitled to qualified immunity, summary judgment is granted in favor of Defendants.

I. Background

Simon, proceeding *pro se*, filed a civil rights complaint under 42 U.S.C. § 1983 on February 3, 2017. (Doc. 1). Simon alleges she was maliciously prosecuted and falsely arrested by Defendants. (Doc. 1). Simon is not presently incarcerated. Simon seeks punitive and compensatory damages in excess of $75,000. (Doc. 1).

---

[1] The deadline for dispositive motions was October 31, 2017. (Doc. 26). Simon's Motion for Summary Judgment was untimely filed on November 9, 2017. (Doc. 57). Defendants assert Simon's Motion for Summary Judgment should be denied as untimely. (Doc. 60). Regardless, for the reasons discussed herein, Simon has failed to show any genuine issue of material fact and Defendants are entitled to summary judgment.

1

Simon contends she is an insanity acquittee, found not guilty by reason of insanity on September 29, 2003. (Doc. 1). Simon was given a "Conditional Release and Probation Supervision" form to sign. (Doc. 1). Simon alleges she signed it without the assistance of counsel and when she was not on medication. (Doc. 1). Simon was supervised by Kenneth Cooley initially, then Mike Cole, then by Karen Medlock beginning in 2011. (Doc. 1). Medlock was the District V Forensic Coordinator charged with monitoring Simon's compliance with court-ordered treatment and her "conditional release." (Doc. 1). Medlock works with Simon's Probation Officer LaSaundra Fontenot.[2] (Doc. 1). Duncan is Medlock's supervisor and Director of Community Forensic Services, Louisiana Department of Health ("LDH").[3] (Doc. 1).

Simon contends she and Medlock never got along and admits she told Medlock she should be fired. (Doc. 1). Simon alleges that, as a result, Medlock recommended to the Court that, since Simon was in psychosis, she needed to be placed in jail. (Doc. 1). Simon further alleges Medlock presented false information to the judge and the Assistant District Attorney. (Doc. 1). Simon contends that Medlock can only authorize her hospitalization, and that the recommendation of jail constitutes malicious prosecution. (Doc. 1). Simon contends Medlock then demanded an immediate meeting with her while Simon was at work, and had Simon arrested for failing to go to the meeting. (Doc. 1). Simon admits Duncan sent her a text message

---

[2] LaSaundra Fontenot is not a party to this action.

[3] LDH was formerly the Louisiana Department of Health and Hospitals ("DHH").

to call Medlock and told her it is considered a violation of probation to not talk to Medlock. (Doc. 1). Simon contends Medlock violated her Fourth and Fourteenth Amendment rights for having her arrested without cause. (Doc. 1). Simon further contends she contacted Gee, but all agencies dismissed her complaints. (Doc. 1).

Defendants answered the complaint denying Simon's allegations, and asserting various affirmative defenses, including qualified immunity. (Docs. 12, 13).[4] Defendants now seek summary judgment based on qualified immunity. (Doc. 52). Simon opposes the motion. (Docs. 58, 61, 68). Simon also filed a cross-motion for summary judgment. (Doc. 57). Simon requests summary judgment in her favor based on Defendants acting outside the scope of their duties.[5] (Doc. 57). Defendants oppose Simon's motion. (Doc. 60).

## II. Law and Analysis

### A. Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

---

[4] Simon sought to amend her Complaint to add the State of Louisiana (Doc. 18), which was denied as barred by the Eleventh Amendment. (Doc. 55). Simon's second motion to amend, seeking a discharge from monitoring by the State of Louisiana (Doc. 32), was also denied. (Doc. 55). Simon's third and fourth motions to amend (Docs. 35, 39) were also denied. (Doc. 55).

[5] Simon continues to request the Court discharge the State and its agencies from monitoring her. (Doc. 57). However, that request has already been denied as such relief is appropriately sought in a petition for habeas relief, not through a civil rights complaint. (Doc. 55).

> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[6]

Fed. R. Civ. P. 56(e).

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

If the movant produces evidence tending to show that there is no genuine issue of material fact, the non-movant must then offer evidence sufficient to establish a genuine issue of material fact. Herrera v. Millsap, 862 F.2d 1157, 115 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992), cert. denied, 506 U.S. 825 (1992).

---

[6] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

4

Additionally, where a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the Plaintiff to raise facts that dispute the defendant's assertion of qualified immunity." Estate of Pollard v. Hood Cnty., Tex, 579 F.App'x 260, 264 (5th Cir. 2014) (per curiam). The court must still view all facts and make all reasonable inferences in light most favorable to the plaintiff. Id. But "plaintiff must produce evidence that presents a genuine issue of material fact that (1) the defendants' conduct amounts to a violation of the plaintiff's constitutional right; and (2) the defendants' actions were 'objectively unreasonable in light of clearly established law at the time of the conduct in question." Id. (quoting Cantrell v. City of Murphy, 666 F.3d 911, 922 (5th Cir. 2012). cert. denied, 133 S.Ct. 119 (2012). If the plaintiff fails, the motion for summary judgment should be granted. Estate of Pollard, 579 F.App'x at 264.

### B. 42 U.S.C. § 1983

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must establish (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law. Bryant v. Military Dep't of Miss., 597 F.3d 678, 686 (5th Cir. 2010).

C. <u>Qualified Immunity</u>

Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. <u>Gobert v. Caldwell</u>, 463 F.3d 339, 345 (5th Cir. 2006) (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987)). In determining whether an official enjoys qualified immunity, the Court must determine (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right, and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known. <u>Id.</u> (citing <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002)).

A legal right is clearly established if the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Thompson v. Upshur County, Texas</u>, 245 F.3d 447, 457 (5th Cir. 2001) (quoting <u>Anderson</u>, 483 U.S. at 635). A court may evaluate the reasonableness of the official's conduct and the existence of a statutory or constitutional violation in either order. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009) (internal quotation marks omitted). "Bare allegations of malice should not suffice" to overcome qualified immunity. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817 (1982).

D. <u>Simon has not raised a genuine issue of material fact that Defendants are entitled to qualified immunity under 42 U.S.C. § 1983.</u>

Defendants assert there is no genuine issue of material fact they are entitled to qualified immunity under § 1983. (Doc. 52-1). Defendants assert their actions

6

were not objectively unreasonable in light of clearly established law. (Doc. 52-1). Defendants further assert that Simon's failure to comply with court-ordered probation requirements resulted in her arrest. (Doc. 52-1).

Simon opposes and filed a cross-motion for summary judgment, asserting she was unlawfully arrested on May 27, 2016, and that her constitutional rights were violated. (Docs. 57, 68). Simon asserts Medlock and Duncan acted outside the scope of their duties. (Docs. 58, 68). Simon further asserts that Medlock was acting in a police capacity rather than a medical professional or social worker capacity when she obtained a warrant for Simon. (Doc. 68). Simon contends Medlock, in her role as District Forensic Coordinator, has no legal authority to obtain warrants to arrest people for "non-criminal activity."[7] (Doc. 68). Rather, Simon concedes that her Parole Officer LaSaundra Fontenot had the discretion to do so. (Doc. 68). Simons contends that Defendants acted outside of their duties, which she alleges is to monitor only. (Doc. 68).

The following facts are undisputed:

(1) The incident at issue occurred on May 27, 2016, at the Kroger Grocery Store in Lake Charles, Louisiana.
(2) At the time of the incident, Simon was on "conditional release and probation supervision" as a result of being found not guilty by reason of insanity of second degree murder and three counts of attempted first degree murder on September 29, 2003.[8]

---

[7] The records submitted by Simon show LaSaundra Fontenot, not Medlock, caused Simon to be arrested on May 27, 2016 for violations of the terms of her probation. (Doc. 57-2).

[8] Simon was initially ordered released on probation subject to general conditions under La. Code Crim. P. art. 895 and subject to special conditions for an indeterminate period of time. (Doc. 18-1, p. 2). The special conditions included that Simon shall be recommitted if she becomes dangerous to herself or others; that she shall remain under the care of a licensed psychiatrist or clinical psychologist; that she remain in a "structured environment" such as a group home or halfway house treatment facility; . . . and that at least annually, the treatment facility where she is housed . . . make a report to the Court

7

(3) As part of her "conditional release and probation supervision," Simon was required to meet with Karen Medlock, district forensic coordinator, once a month.
(4) Medlock called, texted, and emailed Simon beginning on May 23, 2016 to see Simon.
(5) On May 27, 2016, Duncan sent Simon a text message informing Simon to call Medlock as soon as possible and informed Simon that not talking to Simon is a violation of probation.
(6) Simon was arrested on May 27, 2016 outside of Kroger, where Simon was employed.
(7) Simon was not terminated from her job at Kroger as a result of being arrested on May 27, 2016.
(8) Simon was not demoted from her position at Kroger as a result of the alleged incident.

Simon disputes that Medlock made "attempts" to contact her by phone calls, texts, or email. (Doc. 61). Rather, she asserts Medlock spoke to her by phone and email, and they set the date of June 3, 2016 for a meeting. (Doc. 61). Simon also disputes that Medlock's supervisor, Duncan, attempted to contact her on May 27, 2016 in an attempt to set up Simon's monthly mandatory meeting with Medlock. (Doc.

---

on her status and progress. (Doc. 18-1, p. 3). Simon was ordered to a forensic facility, but due to lack of bed space, was diverted to outpatient community mental health treatment and was granted conditional release.

On June 22, 2005, Simon signed a "Conditions of Release Document," which included conditions that Simon shall regularly attend monthly counseling and/or treatment, or more frequently if directed by her Probation Officer, local mental health center staff, or DHH-District Forensic Coordinator; shall be subject to outpatient tracking and monitoring services provided by the District Forensic Coordinator; and that she will not exhibit any assaultive behavior toward others and if she presents as a danger to self or others, she will be remanded to immediate in-patient hospitalization or returned to custody for further proceedings. (Doc. 18-1, p. 10). Another condition included that failure to comply with treatment and/or failed appointments to the DHH-District Forensic Coordinator and Probation Officer would result in Simon being remanded for further court proceedings. (Doc. 18-1, p. 10). Additionally, the conditions included that Simon would follow the requirements of La. Code Crim. P. art. 895, including submitting to available medical, psychiatric, mental health, or substance abuse examination or treatment or both when deemed appropriate or ordered to do so. (Doc. 18-1, p. 11). By her signature, Simon acknowledged her failure to abide by and conform to these conditions could result in revocation of her conditional release. (Doc. 18-1, p. 10).

8

61). Simon also disputes that Duncan contacted her to inform her that if she didn't contact Medlock, she would be in violation of her probation. (Doc. 61).

Simon alleges Duncan never called her nor had any definitive contact with her to inform her they would have her arrested that day. (Doc. 61). Simon disputes that Duncan never had any direct contact with her, other than when she tried to contact Simon in an attempt to set up her mandatory monthly meeting with Medlock in May 2016. (Doc. 61). Simon asserts Duncan had contact with her in 2011, including various emails through the years. (Doc. 61). She asserts she did not talk to Duncan in May 2016 by phone, text, or email. (Doc. 61). However, Simon admits in her Complaint that Duncan texted her on May 27, 2016 to contact Medlock within 10 to 15 minutes and informed her that not speaking to Medlock was a violation of probation. (Doc. 1).

Simon also disputes that Gee was not involved with any direct interactions between Simon, Medlock, and Duncan regarding setting up her monthly meeting in May 2016, and resulting in her arrest on May 27, 2016. (Doc. 61). Simon asserts Gee was aware of the scope of duties of the Community Forensic Division, and did not terminate Medlock after allegedly being informed of her meltdown in Simon's apartment. (Doc. 61). However, Simon concedes Gee had no direct knowledge of the alleged incident "as it occurred." (Doc. 61).

"A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures

9

from the usual warrant and probable-cause requirements." Griffin v. Wisconsin, 483 U.S. 868, 873-74 (1987). The United States Supreme Court explained:

> Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. A number of different options lie between those extremes, including confinement in a medium- or minimum-security facility, work-release programs, halfway houses, and probation-which can itself be more or less confining depending upon the number and severity of restrictions imposed.

Id. at 874 (citations and quotations omitted). Thus, the Court concluded, "[t]o a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)).

> Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens. United States v. Knights, 534 U.S. 112, 117, 122 S.Ct. 587, 151 L.Ed. 2d 497 (2001). The Supreme Court ". . . has repeatedly acknowledged that a State has an 'overwhelming interest' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.' Pennsylvania Bd. of Probation and Parole, 524 U.S., at 365, 118 S.Ct. 2014 (explaining that the interest in combating recidivism 'is the very premise behind the system of close parole supervision'). Similarly, [the] Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment. See Griffin, 483 U.S., at 879, 107 S.Ct. 3164; Knights, supra, at 121, 122 S.Ct. 587." Samson v. California, 547 U.S. 843, 126 S.Ct. 2193, 2200, 165 L.Ed.2d. 250 (2006).

10

See Edwards v. Stephens, 2006 WL 2349584, at *6 (W.D. La. July 12, 2006).

Louisiana law provides that when a committed person is released on probation, known as "conditional release," the probationer shall be under the supervision of probation and parole, and the Louisiana Department of Health ("LDH") shall be responsible for the community treatment and monitoring of persons placed on outpatient status. La. Code Crim. P. 658. "When the probationer violates or is about to violate the conditions of [her] probation, [she] may be arrested and detained in conformity with the applicable provisions of Article 899 of this Code." La. Code Crim. P. art. 658(B)(1).[9] The division of probation and parole or the LDH through its conditional release program coordinator or a designee shall immediately notify the court of any substantive violations or imminent violations of the conditions of a person's probated release and shall present recommendations to the court regarding whether the court should revoke the probation and recommit the probationer. Id.

"The court, on its own motion or that of the district attorney or probation officer, or upon receiving a report recommending revocation or other disposition from the conditional release program coordinator, may cause the person to be arrested, if he is not already in custody, and shall immediately hold a hearing to consider the

---

[9] La. Code Crim. P. art. 899(B) states, in pertinent part: "If a probation officer has reasonable cause to believe that a [probationer] has violated or is about to violate a condition of his probation or that an emergency exists so that awaiting an order of the court would create an undue risk to the public or the probationer, the probation officer may arrest the [probationer] without a warrant . . . . The probation officer shall immediately notify the proper court of the arrest and shall submit a written report showing what manner the [probationer] violated, or was about to violate, a condition of his probation." La. Code Crim. P. art. 899(B).

violations listed or transfer the case to the parish of commitment, if different from that of the arrest, at which place the hearing should be held as soon as possible." Id.

Here, Simon also does not dispute she was subject to treatment and monitoring as a condition of her release. Rather's Simon's contact with the District Forensic Coordinator of LDH was a court-imposed condition at the time of her alleged incident. Additionally, none of the cases cited by Simon are applicable to the facts of her case. Simon concedes that Medlock was responsible as the District Forensic Coordinator for monitoring her pursuant to her conditions of release and supervision. Simon asserts Gee ignored Simon's complaint regarding Medlock and allowed her to continue to monitor her. Simon claims Medlock acting in a police capacity and went to the judge and had her arrested. (Doc. 68). Simon asserts that she agreed to, and a meeting was set for, June 3, 2016, but was arrested without probable cause. (Doc. 61).

However, records submitted by Simon show a series of emails reflecting her refusal to cooperate with Medlock and her refusal to submit to a mental health evaluation as directed by Medlock. (Doc. 57, pp. 1-6; Doc. 61, pp. 23-31). Simon testified in her deposition that she was required to meet with Medlock once a month. (Doc. 52-5). Simon testified Medlock called, emailed, and texted her prior to the alleged incident, beginning May 23, 2016, but that she did not call her back immediately. (Doc. 52-6). Moreover, the record shows Simon's Probation Officer, LaSaundra Fontenot, submitted a "Detainer Notification, Affidavit of Probable Cause, and Motion for Hearing to Revoke Probation" attesting that she caused Simon

12

to be arrested on May 27, 2016, for violations of the terms of her probation. (Doc. 57-2). The judge found probable cause on the probation violation, ordered a hearing, and denied bail. (Doc. 57-2). Simon asserts she has since been released from probation and conditional release and supervision as of April 2018. (Docs. 68, 69). Even assuming those facts as true, that has no bearing on the allegations concerning her May 27, 2016 arrest for violating her conditional release and supervision.

Defendants are entitled to summary judgment based on qualified immunity. Qualified immunity protects public officials from civil liability if, viewing the alleged facts in the light most favorable to the plaintiff, the official's conduct did not violate a constitutional right so clearly established that the conduct was unreasonable. Haggerty v. Tex. S. Univ., 391 F.3d 653, 655 (5th Cir. 2004). Simon does not dispute she was subject to Conditional Release and Supervision. During the time period relevant to this inquiry, plaintiff was a probationer. As such, Simon was also required to "[s]ubmit [her]self to available medical, psychiatric, mental health, or substance abuse examination or treatment or both when deemed appropriate and ordered to do so by the probation and parole officer." See La. Code Crim. P. art. 895(A)(12). Moreover, La. Code Crim. P. 658(B) mandates that the division of probation and parole or the LDH through its conditional release program coordinator or a designee immediately notify the court of any substantive violations or imminent violations of the conditions, and provides that a probationer may be arrested and detained in conformity with the applicable provisions of Article 899 for same. La. Code Crim. P. 658(B).

Simon has shown no genuine issue of material fact that Defendants violated her constitutional rights. Even if Defendants' conduct actually violated Simon's constitutional rights, they are entitled to qualified immunity because the conduct was objectively reasonable under the circumstances. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 279-80 (5th Cir. 1992).

## III. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 52) is GRANTED.

**IT IS FURTHER ORDERED** that Simon's Motion for Summary Judgment (Doc. 57) is DENIED.

**IT IS FURTHER ORDERED** that Simon's action against all Defendants is DISMISSED WITH PREJUDICE.

**THUS DONE AND SIGNED** in chambers in Alexandria, Louisiana, this __21st__ day of September, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge